IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MARTY WAYNE BELL, ID # 1112384,  )<br>Petitioner,  )<br>vs.  )<br>  )<br>NATHANIEL QUARTERMAN,[1] Director,  )<br>Texas Department of Criminal  )<br>Justice, Correctional Institutions Division,  )<br>Respondent.  ) | No. 3:05-CV-0272-D (BH)<br>ECF<br>Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b), and an order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

**I.   BACKGROUND**

**A.   Nature of the Case**

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge his conviction for murder in Cause No. F01-51032-U. Respondent is Nathaniel Quarterman, Director of TDCJ-CID.

**B.   Procedural and Factual History**

On April 4, 2001, the State indicted petitioner for the murder of Harold Nunley, Jr. (Nunley). CR[2] at 2 (indictment). The indictment contained an enhancement paragraph relating

---

[1] On June 1, 2006, Nathaniel Quarterman became the Director of the Texas Department of Criminal Justice - Correctional Institutions Division. The Court thus substitutes him for Douglas Dretke. *See* Fed. R. Civ. P. 25(d)(1).

[2] "CR" refers to the Clerk's Record in Cause No. F01-51032-U.

to a prior felony conviction. *Id.* at 4. On March 12, 2002, the case against petitioner proceeded to trial, and the trial court commenced voir dire examination of prospective jurors. *See* Rep.'s R., Vol. II [hereinafter cited as RR-volume # at page]. During the course of such examination, the court made the following comments in determining whether voir dire members were open-minded with respect to the full range of punishment:

> I do not know whether you will find Mr. Bell guilty or not guilty. If you find him not guilty, then you will never address the question of punishment. However, if you do find him guilty you will be called upon to set the punishment in the case.
> The law does not allow me to stop the trial at that point to determine whether each of you has an open mind to that full range of punishment. So it must be done now.
> So if you will, let's assume that you have found Mr. Bell guilty. Then on the punishment phase of the trial you will be asked to set the punishment within the range allowed by law which is not less than five years nor more than 99 years or life in prison. And that is the Institutional Division of the Texas Department of Criminal Justice.
> Now, in this case there is an allegation that Mr. Bell has been previously convicted of a felony offense. If the State is able to prove that allegation beyond a reasonable doubt, then the range of punishment would be from a minimum of 15 years in the penitentiary up to 99 years or life in prison. . . .
> . . .
> The range of punishment as far as years in the penitentiary, that is mandatory. It cannot be less than five, nor more than 99 years or life in prison or if you find beyond a reasonable doubt that Mr. Bell has in fact been previously to the penitentiary for a felony offense, then the range of punishment would be not less than 15 nor more than 99 years or life in prison. So that is the range of punishment in those instances.
> In a moment I'm going to ask you whether each of you has an open mind to that full range of punishment which simply means that if you heard a case of murder that called for five years in the penitentiary, you could do that or if it called for 99 years or life in prison, you could do that or anywhere in between.

*Id.* at 21-22. When later asked by the court, no prospective juror indicated that they could not set the punishment within the range allowed by law. *Id.* at 23. Ultimately, a jury was selected to hear the case. *See id.* at 152-53.

2

The State presented numerous witnesses and exhibits at trial. *See generally* RR-III and IV. The undisputed evidence shows that Nunley was petitioner's sister's boyfriend; that petitioner and Nunley had gotten into a fight on the night Nunley was shot, March 6, 2001; and that Nunley subsequently made his way to Joseph Turner's (Turner) home and ultimately died from the gunshot wounds. *See, e.g.*, RR-III at 11-15, 33, 44, 70-80, 92-93, 110-11, 121, 136, 144-146, 170. The State presented testimony from Turner that Nunley stated to him that "Marty shot me", RR-III at 15, 34, and from Officer Katrina Swyrn that, when she asked Nunley who shot him, all she could understand was "brother", *id.* at 41-43. The State presented testimony from Nunley's father that petitioner's sister called him on the night his son was shot, and told him to come get his son before something happened to him. *Id.* at 136-38. The State also presented testimony from the mother of Nunley's child that petitioner's sister called her the morning of March 7, 2001, and told her that her brother had shot Nunley. *Id.* at 186-87.

The defense presented two witnesses for petitioner who provided an alibi for him for a couple of hours prior to Nunley appearing at Turner's home after being shot. *See generally* RR-IV at 30-47. The defense also intended to call a witness to testify that, on the day of the shooting, "some guys" in a dark blue Caprice had yelled to Nunley: "We will kill you now but we're going to wait until night." *See id.* at 48-50. However, at a sub rosa hearing, the trial court ruled that the testimony was hearsay and inadmissible. *Id.* at 51. The defense thus did not call the witness to testify before the jury. *Id.*

On March 14, 2002, the jury found petitioner guilty as charged in the indictment. RR-VI at 95. After petitioner pled true the enhancement paragraph, the jury assessed his punishment at

sixty-five years imprisonment. *Id.* at 97-98, 118-19. The court sentenced him in accordance with that assessment. *Id.* at 119.

On January 29, 2003, the Fifth District Court of Appeals of Texas at Dallas affirmed the conviction. *Bell v. State*, No. 05-02-00479-CR, 2003 WL 187427, at *1 (Tex. App. – Dallas Jan. 29, 2003, pet. ref'd). On November 9, 2004, petitioner filed a state application for writ of habeas corpus and a memorandum to support such application wherein he alleged that he had newly discovered evidence which proved his factual innocence and indicated that a Fred Buchanan murdered Nunley.[3] S.H. Tr.[4] at 2, 27-28. On January 19, 2005, the Texas Court of Criminal Appeals denied petitioner's application without written order. *Ex parte Bell*, No. 60,969-01, slip op. at 1 (Tex. Crim. App. Jan. 19, 2005).

On February 8, 2005, the Court received the instant petition for federal habeas relief. On February 24, 2005, the Court received petitioner's memorandum in support of his petition. Respondent thereafter filed an answer and provided the state-court records. Petitioner filed a reply brief.

## C. Substantive Issues

In four grounds for relief, petitioner raises the following claims: (1) trial court error (Grounds 1 and 3); (2) ineffective assistance of trial counsel (Ground 2); and (3) factual innocence (Ground 4).

---

[3] The petition and memorandum mention a number of affidavits that petitioner purports to have attached to the memorandum. *See* S.H. Tr. at 8, 13, 21-28. The state habeas record, however, does not contain any attachments to the state application or supporting memorandum. *See generally id.* at 1-49. Furthermore, the State's response to the petition specifically indicates that petitioner "failed to attach any evidence to his application." *See id.* at 36. In addition, the habeas record has been certified to be a true and correct transcript of all matters received. *See id.* at 49.

[4] "S.H. Tr." denotes the state habeas records attached to *Ex parte Bell*, No. 60,969-01, slip op. (Tex. Crim. App. Jan. 19, 2005).

**D. Exhaustion**

Respondent concedes that petitioner has sufficiently exhausted his state remedies regarding the claims raised in this action. (*See* Answer at 5.)

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, no one disputes the applicability of the AEDPA standards to petitioner's claims.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established fed-

eral law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

With these AEDPA standards in mind, the Court proceeds to address the merits of petitioner's claims.

6

### III. TRIAL COURT ERROR

Petitioner claims that the trial court erred when it (a) informed the jury panel during voir dire of allegations that petitioner had a prior felony conviction and (b) failed to afford petitioner his right to testify on his own behalf. He argues that the court's comments during voir dire tainted his constitutional right to be presumed innocent.

"The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle v. Williams*, 425 U.S. 501, 503, (1976). Criminal defendants, furthermore, have the right to testify in their own defense. *Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987). Only the defendant may waive this well-established right. *United States v. Brown*, 217 F.3d 247, 258 (5th Cir. 2000). The right is "absolute" and defendants are "not bound" by their attorneys' advice. *Meadows v. Procunier*, 636 F. Supp. 1, 7 (N.D. Tex. 1985).

An infringement on the presumption of innocence or the right to testify is subject to harmless-error analysis. *See Williams*, 425 U.S. at 506 (presumption of innocence); *Jordan v. Hargett*, 34 F.3d 310, 315-16 (5th Cir. 1994) (right to testify), *vacated en banc on other grounds*, 53 F.3d 94 (5th Cir. 1995) (indicating that the court "need not decide the questions of constitutional law discussed in the panel opinion"); *Graham v. Roberts*, 96 F.3d 1445, 1996 WL 512222, at *1 (5th Cir. Aug. 28, 1996) (unpublished per curiam opinion) (right to testify); *Wright v. Estelle*, 549 F.2d 971, 974 (5th Cir. 1977) (right to testify), *aff'd en banc*, 572 F.2d 1071 (5th Cir. 1978).

Because a petitioner is entitled to federal habeas relief due to trial error only if such error is not harmless, *i.e.*, "the error 'had substantial and injurious effect or influence in determining the . . . verdict'", *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (citation omitted), the Court need

not definitively determine whether the trial court failed to afford petitioner his right to testify or erred in making the comments during voir dire.

> [U]nder *Brecht*, a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict. It must have had a substantial effect or influence in determining the verdict. We recognize, however, that if our minds are "in virtual equipoise as to the harmlessness," under the *Brecht* standard, of the error, then we must conclude that it was harmful.

*Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999) (quoting *Woods v. Johnson*, 75 F.3d 1017, 1026-27 (5th Cir. 1996)). To be entitled to federal habeas relief due to a trial error, petitioner must show the error actually prejudiced him. *Brecht*, 507 U.S. at 637.

Petitioner has not shown that the alleged trial court errors had a substantial and injurious effect or influence on the jury's verdict. With respect to his failure to testify, petitioner has provided nothing to indicate what testimony he would have presented that would have had a substantial effect or influence in determining the verdict. In petitioner's memorandum in support of his state application for writ of habeas corpus, he indicates that he would have testified that "Fred Buchanan committed the crime" and that petitioner was "with the two witnesses who" testified as to his alibi defense.[5] *See* S.H. Tr. at 28. According to that memorandum, had petitioner testified at trial he would have attempted to blame someone else for the murder while simultaneously advancing his alibi defense. However, the jury heard and rejected petitioner's proffered alibi defense. He has not shown how he would have overcome the testimony presented by the State, including Turner's testimony that the victim said "Marty shot me." Thus, even assuming for purposes of this recom-

---

[5] The memorandum also mentions three affidavits related to his claim that he was denied his right to testify (purported attachments D, $D_1$, and $D_2$) – one of which purportedly provides the testimony that he would have provided at trial. *See* S.H. Tr. at 13, 25-28. As already mentioned, the state habeas record does not contain any attachments to the state application or supporting memorandum.

8

mendation that the trial court somehow prevented petitioner from testifying, the Court finds no prejudice to petitioner. Harmless error is insufficient to obtain federal habeas relief.

With respect to the comments of the trial court during voir dire, the Court finds that the comments merely stated an allegation that petitioner had been previously convicted of a felony offense. Such comments do not appear to touch upon the presumption of innocence accorded to petitioner against the charge of murder that he faced. The Court, moreover, finds no reasonable possibility that the voir dire comments contributed to the verdict. Petitioner is thus entitled to no habeas relief due to the voir dire comments of the trial court.

For all of these reasons, petitioner's claims of trial court error entitle him to no habeas relief in this action.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner claims that his attorney rendered ineffective assistance of counsel at and before his trial. To successfully state a claim of ineffective assistance of counsel under Supreme Court precedent, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

9

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In the context of ineffective assistance of trial counsel, the prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96.

Petitioners must "affirmatively prove prejudice." *Id.* at 693. They cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations, furthermore, are insufficient to obtain habeas relief. *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

In this case, petitioner specifically alleges that his attorney rendered ineffective assistance when he failed to (a) adequately investigate material defense witnesses; (b) object to the voir dire comments of the trial court; (c) file a motion to disallow reference to his prior convictions or extraneous bad acts; (d) file a motion in limine to require a hearing before mentioning prior convictions or bad acts; and (e) request a jury instruction to direct the jury to disregard the trial court's voir dire comments regarding petitioner's prior conviction. (Pet. at 7-7a.) He also claims that his attorney rendered ineffective assistance when he (f) did not allow petitioner to testify on his own behalf. (*Id.* at 7a.)

Even assuming for purposes of this recommendation that the listed allegations constitute deficient representation, petitioner is entitled to no federal habeas relief because he has shown no prejudice from the alleged deficiencies of counsel. The Court has already found that petitioner was not prejudiced by his failure to testify at his trial or by the trial court's voir dire comments about an allegation that petitioner had a prior felony conviction. For the same reasons, petitioner was not prejudiced by (1) any attorney conduct which prevented petitioner from testifying on his own behalf or (2) the failures of counsel to object to the trial court's comments, to request a curative jury instruction regarding such comments, or to file motions relating to such comments or seeking an in limine ruling to require a hearing before mentioning prior convictions and bad acts. Petitioner has shown no reasonable probability that, but for the alleged deficiencies of counsel, the outcome of his trial would have differed. He has shown nothing to undermine confidence in the verdict.

With respect to the alleged failure of his attorney to adequately investigate his case, petitioner has also not affirmatively shown that he was prejudiced by such failure. He has shown no reasonable probability that, but for the failure to investigate, the outcome of his trial would have differed. In his memorandum in support of his state application for writ of habeas corpus petitioner stated:

> There were readily available and willing to testify witnesses who are material to the defense position (as presented at trial) that the crime scene investigator, Detective John Simonton did not canvass the neighborhood looking for witnesses who had knowledge of the incident; as he testified he did. See attachments – "A", "$A_1$", "$A_2$", "B", "$B_1$", "C", "$C_1$", "D". These affidavits translate into the testimony that the crime scene investigator did not canvass the neighborhood looking for witnesses but simply went with the conclusion that since applicant got into a fight with the victim just hours prior to his murder that it must have been applicant. When in fact he did not canvass the neighborhood, there were witnesses who would have corroborated the fact that the victim was threatened earlier that day, and that witnesses either seen Fred Buchanan driving a dark colored automobile at time of shooting or heard that

11

> he was the killer, or actually saw him do it. Yet, counsel's investigation uncovered none of these witnesses. This is a deficient performance, and because the viable defense of innocence is advanced through the collective effect of said witness affidavits, it is obvious there is a reasonable probability that the outcome of the proceedings would have been different because the confidence in the proceeding is undermined.

S.H. Tr. at 21 (some obvious grammatical, spacing, and spelling errors corrected). He further stated that additional pretrial investigation would have uncovered "material defense witnesses who would have advanced the viable defense of innocence." *Id.* at 22. He therein argued that had counsel adequately investigated his case, a reasonable probability existed that the outcome of the proceedings would have differed in light of the witnesses that would have been uncovered. *Id.* at 23.

As previously mentioned, the habeas record does not contain the attachments mentioned in petitioner's memorandum in support of his state application. Petitioner, furthermore, provides nothing in the instant federal action to show a reasonable probability that further investigation by his attorney would have affected the outcome of his trial. He merely asserts that such investigation would have uncovered the unidentified witnesses mentioned in his state supporting memorandum. However, unsupported claims regarding "uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) (citing *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001)). In addition, for petitioner "to demonstrate the requisite *Strickland* prejudice, [he] must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial." *Id.* (quoting *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)). Petitioner has not shown that any uncalled witness would have testified at trial. He has not carried his burden

12

to show that he was prejudiced by the alleged deficiency of counsel relating to the level of pretrial investigation.

For all of these reasons, petitioner's claims of ineffective assistance of counsel entitle him to no habeas relief.

## V.  ACTUAL OR FACTUAL INNOCENCE

In his last claim, petitioner asserts that he is factually innocent of the crime for which he has been convicted.

With respect to whether a petitioner may obtain federal habeas relief on a claim of actual innocence, the Fifth Circuit Court of Appeals has recognized *Townsend v. Sain*, 372 U.S. 293 (1963), as the unequivocal position of the United States Supreme Court on the matter.  *See Boyd v. Puckett*, 905 F.2d 895, 896 (5th Cir. 1990); *Armstead v. Maggio*, 720 F.2d 894, 896 (5th Cir. 1983) (per curiam).  In *Townsend*, the Court held that "the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." 372 U.S. at 317, *overruled in part on other grounds*, *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992).  In the Fifth Circuit, actual innocence is not an independent basis for federal habeas relief.  *E.g., Graham v. Johnson*, 168 F.3d 762, 788 (5th Cir. 1999); *Lucas v. Johnson*, 132 F.3d 1069, 1075 (5th Cir. 1998); *Jacobs v. Scott*, 31 F.3d 1319, 1324 (5th Cir. 1994).  Petitioner thus cannot succeed on his actual innocence claim standing alone.

Petitioner, moreover, has not established that he is actually innocent.  The Supreme Court has held that to show actual innocence, a petitioner must establish:

> that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt . . . in light of all of the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and

13

> evidence tenably claimed to have been wrongly excluded or to have become available only after trial.

*Schlup v. Delo*, 513 U.S. 298, 321 (1995).

Petitioner has not met this standard. A jury found him guilty on the evidence presented against him. Although he purports to have newly discovered evidence which proves that he is factually innocent of Nunley's murder, he provides no competent evidence of such proof. He has provided nothing to establish that it is more likely than not that no reasonable juror would have found him guilty. He has provided nothing to show that the jury improperly rejected his alibi defense. He has provided nothing to show that Fred Buchanan actually committed the murder. He has provided nothing to show that he did not commit the murder.

Because a claim of actual innocence is not cognizable on federal habeas corpus, and petitioner has not shown himself to be actually innocent within the meaning of *Schlup* in any event, this claim entitles him to no federal habeas relief.

## VI. STATE CONSIDERATION OF CLAIMS

Petitioner raised each of his federal claims in his state writ. The Texas Court of Criminal Appeals denied that writ, and thus adjudicated the claims on the merits. The decision to deny habeas relief at the state level is consistent with applicable Supreme Court precedent. The decision involved no unreasonable application of Supreme Court precedent. The adjudication of the claims did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented to the state court. Under applicable Supreme Court standards and the AEDPA standards, petitioner is entitled to no habeas relief on the claims raised in the instant petition.

## VII.  EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## VIII.  RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

**SIGNED this 12th day of July, 2007.**

```
_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE
```

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them.  Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

```
_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE
```